JACOBSON & COMPANY, INC.,
Plaintiff-Appellee,

v.

ARMSTRONG CORK COMPANY,
Defendant-Appellant.

No. 232, Docket 76–7336.

United States Court of Appeals,
Second Circuit.

Argued Oct. 18, 1976.

Decided Jan. 25, 1977.

---

Sanford M. Litvack, New York City (James R. Withrow, Jr., John D. Gordan, III, Doris K. Shaw, Donovan, Leisure, Newton & Irvine, New York City, of counsel), for defendant-appellant.

David N. Ellenhorn, New York City (Eugene I. Farber, Moses & Singer, New York City, of counsel), for plaintiff-appellee.

Before HAYS, ANDERSON and GURFEIN, Circuit Judges.

HAYS, Circuit Judge.

Plaintiff-appellee Jacobson & Company, Inc. ("Jacobson") is a contractor in the business of furnishing and installing acoustical ceiling systems, interior partitions, and other interior building products. Defendant-appellant Armstrong Cork Company ("Armstrong") is the largest manufacturer of acoustical and non-acoustical ceiling products in the United States.

In March, 1968 Jacobson was designated an authorized distributor of Armstrong products in New York City, Long Island, Westchester and Rockland Counties (New York State), in Fairfield County, Connecticut, and in northern New Jersey. This relationship continued until March 19, 1976, when Armstrong notified Jacobson that its distributorship was terminated.

In a complaint filed May 26, 1976, Jacobson charged Armstrong with combining, conspiring, and attempting to monopolize and restrain trade, in violation of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, section 3 of the Clayton Act, 15 U.S.C. § 14, and the Robinson-Patman Act, 15 U.S.C. § 13. Essentially, Jacobson alleged that Armstrong had allocated territories among its distributors and had engaged in certain vertical restraints. Jacobson claimed that Armstrong had terminated the distributorship in retaliation for Jacobson's refusal to adhere to these alleged unlawful practices.

Jacobson, arguing, inter alia, that it required access to Armstrong products in order to remain competitive as a ceiling contractor, sought a preliminary and permanent injunction restraining Armstrong from terminating plaintiff as an authorized distributor of Armstrong products and directing Armstrong to sell its products to plaintiff on nondiscriminatory terms. Jacobson also sought treble damages plus costs and attorneys fees.

On July 13, 1976, the United States District Court for the Southern District of New York, Weinfeld, J., entered an order granting plaintiff's motion for a preliminary injunction, pending resolution of the merits of this controversy at trial. It is from this decision that defendant now appeals. We affirm the order of the district court.

I

The district court recognized that the merits of this case turn entirely on factual determinations. Thus, the central issue presented is whether or not Armstrong terminated the distributorship because of Jacobson's resistance to Armstrong's alleged territorial allocations and resale restrictions. If this factual issue is resolved against Armstrong, then plaintiff will almost certainly be entitled to judgment, under the rule of United States v. Arnold, Schwinn & Co., 388 U.S. 365, 379, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967). If, however, the termination was for legitimate business purposes, then Armstrong will prevail.[1]

Judge Weinfeld, applying the familiar standard set forth in Sonesta International

---

1. Armstrong contends that Jacobson was terminated because it made severe cutbacks in its sales organization and adopted a policy of bidding only on very large jobs, which are less profitable to Armstrong. Furthermore, Armstrong claims that as a result of other differ-

*Hotels Corp. v. Willington Associates,* 483 F.2d 247 (2d Cir. 1973),[2] held that while plaintiff had not made a compelling case of probable success on the merits, it had shown sufficiently serious questions going to the merits to make them a fair ground for litigation. This, coupled with the court's finding that the potential hardship to Jacobson outweighed any inconvenience that Armstrong might suffer as a result of an injunction, led the court to conclude that plaintiff had satisfied the second alternative of the *Sonesta* test, and was thus entitled to a preliminary injunction.

Defendant now attacks this decision on two grounds. First, defendant argues that the district court misconstrued the standard to be applied in deciding preliminary injunction motions. Second, defendant claims that, in any event, the record does not support the district court's action. We reject both of these contentions.

## II

Armstrong contends that a greater showing is required for the grant of a preliminary injunction which is mandatory rather than prohibitory in form, and that therefore the district court erred by failing to require a showing of "extreme or very serious damage." *Clune v. Publishers' Association of New York City,* 214 F.Supp. 520, 531 (S.D. N.Y.), *aff'd on the opinion below,* 314 F.2d 343 (2d Cir. 1963).

We agree that a different standard applies to mandatory injunctions. Indeed, Judge Weinfeld recognized as much when he referred to "[t]he court's usual reluctance" to grant such relief. *Jacobson & Company, Inc. v. Armstrong Cork Company,* 416 F.Supp. 564 at 570 (S.D.N.Y. 1976).

Nevertheless, issuance of a preliminary injunction, whatever its form, is in the district court's discretion and will not be overturned absent a showing of abuse of mistake. *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 931–32, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *Triebwasser & Katz v. American Tel. & Tel. Co., supra* at 1358; *S.C.M. Corp. v. Xerox Corp.,* 507 F.2d 358, 360 (2d Cir. 1974); 7 J. Moore, Federal Practice ¶ 65.-04[2] at 65–47–49 (2d ed. 1975). We are not convinced that by failing to articulate the "extreme or very serious damage" formula of *Clune* the district court abused its discretion. Judge Weinfeld was aware that mandatory injunctions present a special case, but nonetheless held that plaintiff had made a sufficient showing to justify preliminary injunctive relief. We decline to disturb that decision.[3]

Nor are we persuaded by Armstrong's argument that the district court

---

ences between the parties, their business relationship had deteriorated. Appellant's Brief at 5–8.

Of course, at this stage we express no opinion as to the merits of the substantive antitrust and factual issues involved in this case.

2. We held in *Sonesta* that a preliminary injunction should issue on a showing of either

"(1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief." 483 F.2d at 250 (emphasis in original). *Accord: Triebwasser & Katz v. American Tel. & Tel. Co.,* 535 F.2d 1356 (2d Cir. 1976); *American Brands, Inc. v. Playgirl, Inc.,* 498 F.2d 947 (2d Cir. 1974); *Gulf & Western Industries, Inc. v. The Great Atlantic & Pacific Tea Co.,* 476 F.2d 687, 692–93 (2d Cir. 1973); *Checker Motors Corp. v. Chrysler Corp.,* 405 F.2d 319 (2d Cir.), *cert. denied,* 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969).

3. This court has implicitly recognized that satisfaction of the *Clune* standard is not a *sine qua non* for obtaining a mandatory preliminary injunction. For example, in *Interphoto Corp. v. Minolta Corp.,* 417 F.2d 621 (2d Cir. 1969) and *Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197 (2d Cir. 1970), we upheld preliminary injunctions directing manufacturers to continue selling products to distributors, without requiring a showing of "extreme or very serious damage."

Appellant's argument, stripped to its essentials, is that the *Clune* standard *replaces* the *Sonesta* test in mandatory injunction cases. Both alternatives of *Sonesta,* however, require that the movant show a threat of irreparable harm. *See Triebwasser & Katz v. American Tel. & Tel. Co., supra,* at 1359 ("[The] language of the second prong of the *Sonesta* test does not eliminate the basic obligation . . . to make a clear showing of the threat of irreparable harm.") Since it seems to us that "irreparable harm" is indistinguishable from "extreme or very serious damage," we read *Clune* as

misapplied the *Sonesta* test by granting the injunction without holding an evidentiary hearing. Defendant did not request an evidentiary hearing below and therefore "cannot be heard to complain" that a hearing was not conducted. *Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197, 1205 (2d Cir. 1970). As we said in *Securities and Exchange Commission v. Frank,* 388 F.2d 486, 493 n. 6 (2d Cir. 1968),

> "if a party is unwilling to have the issuance of a temporary injunction decided on affidavits, he must make his objection known; he may not gamble on the judge's accepting his affidavits rather than his adversary's and then seek a reversal if the result is disappointing."

*See also Dopp v. Franklin National Bank,* 461 F.2d 873, 879 (2d Cir. 1972).

■ Judge Weinfeld had before him not only the pleadings and affidavits of the parties, but also the transcripts of three depositions and a number of exhibits. Where the district court has the benefit of so complete a record, and the parties themselves fail to request a hearing, no evidentiary hearing is required.

■ Appellant also claims that in order to satisfy *either* prong of the *Sonesta* test, the movant must demonstrate a likelihood of success on the merits. Essentially, appellant argues that neither *Sonesta* nor any of the decisions from which the second branch of the *Sonesta* test is derived, *see Gulf & Western Industries, Inc. v. Great Atlantic & Pacific Tea Co.,* 476 F.2d 687, 692–93 (2d Cir. 1973); *Checker Motors Corp. v. Chrysler Corp.,* 405 F.2d 319, 323 (2d Cir.), *cert. denied,* 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969); *Dino DeLaurentiis Cinematografica, S.p.A. v. D–150, Inc.,* 366 F.2d 373, 374–75 (2d Cir. 1966); *Unicon Management Corp. v. Koppers Company, Inc.,* 366 F.2d 199, 204–05 (2d Cir. 1966); *Hamilton Watch Co. v. Benrus Watch Co.,* 206 F.2d 738 (2d Cir. 1953), abandoned the "likelihood of success" requirement. We disagree.

In *Hamilton Watch Co. v. Benrus Watch Co., supra,* Judge Frank declared that

> "[t]o justify a temporary injunction it is not necessary that the plaintiff's right to a final decision, after a trial, be absolutely certain, wholly without doubt; if the other elements are present (*i. e.,* the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation."

206 F.2d at 740 (footnote omitted).

We elaborated upon *Hamilton Watch* in *Unicon Management Corp. v. Koppers Company, Inc., supra* at 204–05, and *Dino DeLaurentiis Cinematografica, S.p.A. v. D–150, Inc., supra* at 375, where we held that a showing of probable success on the merits was required only where the movant has failed to show either a threat of irreparable harm or a balance of hardships in his favor. Accordingly, in *Checker Motors Corp. v. Chrysler Corp., supra,* we affirmed the district court's denial of a preliminary injunction because "a review of the involved hardships and equities did not disclose a balance favoring injunctive relief . . . ." 405 F.2d at 323. *See also Gulf & Western Industries, Inc. v. Great Atlantic & Pacific Tea Co., supra* at 692–93.

Against this background, it simply cannot be maintained that a temporary injunction will not be granted except on a showing of a likelihood of success. *Chicago, Rock Island & P.R. Co. v. Switchmen's Union of North America,* 292 F.2d 61 (2d Cir. 1961), *cert. denied,* 370 U.S. 936, 82 S.Ct. 1578, 8 L.Ed.2d 806 (1962), and *Hoh v. Pepsico, Inc.,* 491 F.2d 556 (2d Cir. 1974), cited by appellant, are not to the contrary. In *Switchmen's Union* we reversed a preliminary injunction order not for want of a showing of probable success, but because we held clearly erroneous a finding of fact relied on by the district court in granting the injunction.

merely a reaffirmation of the traditional reluctance to issue mandatory injunctions "in doubtful cases or where the injury complained of is

capable of compensation in damages." *Clune v. Publishers' Association of New York City, supra* at 531.

292 F.2d at 70–71. Furthermore, that case is inapposite insofar as our decision there was mandated by section 4 of the Norris-LaGuardia Act, 29 U.S.C. § 104. *Id.* at 71.

In *Hoh,* we stated that "some likelihood of success" was required, 491 F.2d at 561, only *after* finding that the hardships did not tip decisively in the movants' favor, *id.* at 560. Clearly, *Hoh* was not a departure from *Hamilton Watch* and its progeny.[4]

We therefore reaffirm that the second branch of the *Sonesta* test requires no more than a showing of "sufficiently serious questions going to the merits to make them a fair ground for litigation." 483 F.2d at 250.

### III

The only remaining question is whether the record supports the district court's findings that Jacobson raised substantial questions regarding the existence of antitrust violations and made a sufficient showing of irreparable injury. We hold that it does.[5]

### A. *The Merits*

Jacobson cites three separate episodes in support of its charge that Armstrong terminated the distributorship because of Jacobson's refusal to adhere to unlawful trade restraints.

First, plaintiff claims that its attempts to penetrate the Philadelphia market in 1970–72 were stymied by Armstrong's refusal to quote prices or provide technical assistance from its local office. By requiring Jacobson to obtain pricing information and servicing from Armstrong's New Jersey office, plaintiff charges, defendant sought to protect the Berger Acoustical Company ("Berger"), its principal Philadelphia distributor. While Jacobson asserts no direct relationship between this episode and the 1976 termination, it does argue that these events illustrate Armstrong's desire to protect the alleged division of territories "and provide a backdrop against which to view later events." 416 F.Supp. at 567.

In rebuttal, Armstrong contends that it was for purely administrative reasons that Jacobson was required to resort to the New Jersey office. This refusal to deal with Jacobson through offices located in other areas, appellant argues, does not rise to the level of an allocation of territories. *See GTE Sylvania, Inc. v. Continental T.V., Inc.,* 537 F.2d 980 (9th Cir. 1976); *World of Sleep, Inc. v. Stearns & Foster Co.,* 525 F.2d 40 (10th Cir. 1975).

Jacobson also contends that the termination was at least partly a reaction to the aggressive sales activities employed at its Elizabeth, New Jersey "supply center".[6]

---

4. Similarly, despite our statement in *Dopp v. Franklin National Bank, supra* at 878, that "a preliminary injunction . . . will not be granted unless the plaintiff can make a clear showing of probable success," we recognized that

"if there is an imbalance of hardships and the equities weigh heavily in favor of the movant, an injunction will issue . . . if 'the plaintiff has raised questions going to the merits so serious, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation.' *Hamilton Watch Co. v. Benrus Watch Co.,* 206 F.2d 738, 740 (2d Cir. 1953)."

*Id.* at 881. Accordingly, it was only in the light of Dopp's inability to prove irreparable injury that we reversed the district court's grant of a preliminary injunction. Since the showing of irreparable harm is required under *both* branches of the *Sonesta* test, *see* note 3 *supra, Dopp* does not support appellant's position.

5. We are aware that the standard for reviewing factual determinations where no evidence was taken in open court below is not whether the district court has abused its discretion. Rather, "this Court is able to exercise its discretion and review the papers *de novo.*" *San Filippo v. United Brotherhood of Carpenters and Joiners of America,* 525 F.2d 508, 511 (2d Cir. 1975). *See also Diversified Mortgage Investors v. U. S. Life Title Insurance Company of New York,* 544 F.2d 571 at 576 (2d Cir. 1976); *Dopp v. Franklin National Bank, supra* at 878–79. Nevertheless, we agree with the district court that the affidavits and other evidence tendered by the parties justify the grant of a preliminary injunction.

6. From its "supply center," Jacobson sells materials directly to purchasers who do their own installation. By buying on a non-installed basis, these purchasers are able to reduce costs.

Jacobson supports this claim with evidence of (1) complaints by Berger to Armstrong about the supply center's discount offers and promotional mailings, and (2) an interoffice memo by Armstrong's general sales manager taking note of the supply center advertisements and expressing the view that Jacobson's activities would create problems for Armstrong with its other distributors.[7]

Armstrong replies that its concern was not with the sales themselves but with the disclosure in these advertisements of its confidential price list, and the tendency of the flyers to create the impression that Jacobson was receiving special price reductions from Armstrong.

Finally, Jacobson cites the circumstances surrounding its February, 1976 bid for a ceiling installation contract in Atlanta, Georgia. Armstrong agreed to provide Jacobson with pricing information and other technical data only after Jacobson objected that the refusal to render these services would be "anticompetitive." Armstrong had initially indicated its disapproval of Jacobson's bidding on Atlanta jobs, in light of Armstrong's "adequate coverage" there from local distributors. Jacobson won that contract, without bidding Armstrong products, and three weeks later was terminated as an Armstrong distributor.

Armstrong claims that there was no antitrust significance to this termination, which it characterizes as a justifiable reaction to Jacobson's alleged practice of using Armstrong's price quotations to predict and undercut the bids of other Armstrong distributors.[8]

On this record, it is questionable whether Jacobson has shown that it is likely to succeed on the merits at trial. However, we think it plain that plaintiff has sustained its burden of raising serious questions going to the merits which make them a fair ground for litigation. The affidavits, depositions, and various exhibits raise at least the inference that Jacobson was terminated because of its extraterritorial sales activities. Although this issue cannot be finally decided until discovery is completed and the court has the benefit of a full factual presentation, Jacobson has satisfied the first half of the alternative *Sonesta* test.[9]

### B. The Balance of Hardships

Judge Weinfeld found that loss of the Armstrong line would jeopardize Jacobson's good will and create a risk of "immeasurable harm" should Jacobson's customers and potential customers turn to competitors who do sell Armstrong products. 416 F.Supp. at 570. He also concluded that the competitive disadvantage at which Jacob-

7. The memorandum, which consisted of handwritten notations annexed to a copy of a Jacobson Supply Center flyer, read as follows:

"Here is an example of what I mean—we'll hear about this from many of our Philadelphia customers. These people don't give a damn about Armstrong. They never have and never will. I doubt very seriously if the $ we'll get in 76 is really worth the grief."

8. In addition to the above contentions, Armstrong asserts that it had compelling business justifications for terminating Jacobson. *See* note 1 *supra*.

9. Armstrong argues that even assuming anticompetitive motivations on its part, it was at most guilty of unilateral action, which fails to satisfy the "contract, combination . . . or conspiracy" requirement of Sherman Act section 1.

There was, however, sufficient evidence to show that the termination may have been part

of an overall scheme to maintain a system of territorial allocations, which would be enough to bring Armstrong within the ambit of section 1. *See Albrecht v. Herald Co.,* 390 U.S. 145, 150 n. 6, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968); *Quinn v. Mobil Oil Co.,* 375 F.2d 273, 276 (1st Cir.), *petition for cert. dismissed,* 389 U.S. 801, 88 S.Ct. 8, 19 L.Ed.2d 56 (1967). Furthermore, there is at least "fair ground for litigation" over whether or not there was a combination or conspiracy between Armstrong and its distributors, since Jacobson's termination closely followed complaints to Armstrong by Berger and another distributor.

Of course, it is for the district court, after a full trial on the merits, to decide whether the Sherman Act covers Armstrong's actions. We merely hold that Jacobson has made a sufficient showing to justify preliminary injunctive relief.

son would be placed were it unable to bid Armstrong products was neither calculable nor compensable in dollars and cents. *Id.*

We agree that Jacobson presented ample evidence to show a threatened loss of good will and customers, both present and potential, neither of which could be rectified by monetary damages. Furthermore, it is clear that continuation of the injunction will cause Armstrong less harm than would be caused Jacobson were the injunction dissolved. Defendant concedes that it will suffer no financial loss as a result of continued dealings with plaintiff; indeed, the only injury claimed by Armstrong is that which arises from being compelled to sell to a distributor against its will. We find this to be insignificant, particularly in light of Armstrong's agreement, despite the termination notice, to sell Jacobson sufficient additional materials to fulfill obligations which existed at the termination date.

In sum, defendant has. been unable to show that it will suffer any real harm if forced to continue selling to plaintiff pending the outcome of this action. Under these circumstances, there has been a clear showing of "a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Sonesta International Hotels Corp. v. Wellington Associates, supra* at 250. *See generally Interphoto Corp. v. Minolta Corp.,* 417 F.2d 621 (2d Cir. 1969); *Bergen Drug Co. v. Parke, Davis & Co.,* 307 F.2d 725 (3d Cir. 1962).

Accordingly, the order of the district court is affirmed.