GRAND LIGHT AND SUPPLY CO.,
INC., Plaintiff,

v.

HONEYWELL, INC. et al., Defendants.

Civ. A. No. 78–342.

United States District Court,
D. Connecticut.

Dec. 11, 1978.

Dennis N. Garvey, Garvey & Walsh,
Ralph K. Winter, New Haven, Conn., for
plaintiff.

Lawrence W. Iannotti, Tyler, Cooper,
Grant, Bowerman & Keefe, Ronald J. Co-
hen, New Haven, Conn., for defendants.

## MEMORANDUM OF DECISION

DALY, District Judge.

Plaintiff, Grand Light and Supply Company, Inc. (Grand Light), is an independent distributor of electrical equipment and supplies. The defendant, Honeywell Micro Switch (Micro Switch), a division of Honeywell, Inc., manufactures and sells electrical switches. For nearly thirty years, Grand Light has been an authorized dealer of the Micro Switch product. In August of 1978, Micro Switch notified Grand Light that the distributorship arrangement was terminated. Subsequently, Grand Light brought this diversity lawsuit for injunctive and monetary relief, claiming that the defendant's action constituted breach of contract, tortious interference with its contractual relationships, and violation of the Connecticut Franchise Act, C.G.S. § 42–133e et seq. Plaintiff now moves for leave to amend the complaint and for a preliminary injunction.

■ Plaintiff seeks to amend the complaint to include federal and state anti-trust claims under 15 U.S.C. § 1 et seq. and C.G.S. § 35–24 et seq. Since the defendant has answered the complaint prior to this motion, this Court is guided by Rule 15(a) of the Federal Rules of Civil Procedure which states that leave should be granted freely as justice allows. Defendant claims that the plaintiff has failed to submit a sufficient factual basis to substantiate the new allegations. However, Rule 15(a) does not require plaintiff to prove its case before submission of amended pleadings. And plaintiff has not engaged in undue delay in seeking amendment to impair defendant's ability to respond. Accordingly, the motion for leave to amend is granted.

■ Plaintiff also seeks a preliminary injunction to prevent Micro Switch from terminating the distributorship and to compel it to continue filling plaintiff's orders. To qualify for the relief requested, plaintiff must meet the criteria established in this Circuit for issuance of a preliminary injunction. In *Caulfield v. Bd. of Ed. of N.Y.C.*, 583 F.2d 605 (2d Cir. 1978), the Second Circuit recently clarified the traditional test announced in *Sonesta Intern'tl Hotels Corp. v. Wellington Associates*, 483 F.2d 247, 250 (2d Cir. 1973), and stated that the plaintiff must make:

> a showing of possible irreparable injury *and* either (1) probable success on the merits *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Caulfield, supra* at 610. In view of *Caulfield*, it is now clear that a showing of irreparable harm is necessary under either prong of the *Sonesta* test. *See Triebwasser & Katz v. American Telephone & Telegraph Co.*, 535 F.2d 1356, 1359 (2d Cir. 1976). This same showing is required explicitly by statute to obtain injunctive relief in anti-trust actions. 15 U.S.C. § 26. *See SCM Corp. v. Xerox Corp.*, 507 F.2d 358, 360 (2d Cir. 1974). Thus, the threshold inquiry in the present case is whether plaintiff has sustained the burden of showing a possibility of irreparable harm.

According to the testimony elicited at the evidentiary hearing on this motion, Micro Switch manufactures a "core" and a "venture" line of electrical switches. The core line apparently consists of switches in such a large number of technical variations that they meet the needs of most industrial users. Consequently, the core line allows Micro Switch to dominate sales in the relevant market. In contrast, the venture line is composed of newer products which are subject to competition from established product lines. Under the Micro Switch Authorized Distributor Policy, Grand Light marketed both the core and venture lines.[1] Grand Light claims that in 1975 Micro Switch launched an illegal scheme to compel its distributors to promote the venture line by threatening them with loss of the

---

1. The Micro Switch line is marketed primarily through Grand Light's industrial sales division. Grand Light is composed of four divisions. The industrial division accounts for thirty per-

cent of Grand Light's annual sales, and sales of Micro Switch constitute approximately six to seven percent of that thirty percent figure. Exh. 29.

critical core line.[2] Grand Light maintains that its refusal to accede to defendant's demands caused the 1978 termination.

To meet its burden of proof regarding irreparable harm, Grand Light introduced testimony for the purpose of substantiating its contention that the loss of the core line would have a "devastating effect" on its industrial sales division. (Tr. p. 260). In particular, both the president and vice-president-sales manager of the company emphasized that the availability of the core line is essential to the successful procurement of blanket orders. Apparently, under a blanket order, Grand Light agrees to make available specific quantities of a wide range of items at particular prices, although the purchasing company does not bind itself to buy those items from Grand Light. Close to seventy-five percent of Grand Light's business is accomplished through this purchasing method.

Officers of Grand Light maintained that inability to furnish the core line would cause large industrial users to seek Micro Switch as well as all of their electrical supply needs from other distributors, thereby impairing the blanket order business.[3] Plaintiff also contends that loss of the core line will adversely affect employee moral and the company's good will. It was maintained that these losses would not be recoverable even if the Micro Switch line was restored in the future.

Plaintiff's counsel argues that the facts of the present case are analogous to other distributor termination cases in this Circuit in which preliminary injunctive relief was granted. Plaintiff specifically cites *Jacobson & Co., Inc., v. Armstrong Cork Co.*, 416

F.Supp. 564 (S.D.N.Y. 1976), *aff'd*, 548 F.2d 438 (2d Cir. 1977) and *Interphoto Corp. v. Minolta Corp.*, 295 F.Supp. 711 (S.D.N.Y. 1969), *aff'd* 417 F.2d 621 (2d Cir. 1969), for the proposition that termination of an important line of products carried by a full line distributor constitutes irreparable harm.[4] Neither of these cases, however, established a per se rule. In fact, the Second Circuit in *Interphoto* pointed out that "(w)ith respect to irreparable injury, while the judge was not obliged to accept plaintiff's contention that it would be unable to calculate its damages, . . . he was free to do so, . . . ." 417 F.2d at 622. Thus, a finding that irreparable injury exists is not implicit in distributor termination cases but rather depends upon whether the facts presented offer sufficiently convincing proof. *Autowest, Inc. v. Peugeot, Inc.*, 287 F.Supp. 718 (E.D.N.Y. 1966). *See John B. Hull, Inc., et al. v. Waterbury Petroleum Products, Inc.*, 588 F.2d 24, at 29 (2d Cir. 1978).

A comparison of plaintiff's case with those of *Jacobson* and *Interphoto* demonstrates only that plaintiff falls short of showing irreparable harm. In *Jacobson*, the terminated product accounted for eighty percent of the distributor's sales volume at a particular supply center, a fact which led the Court to its finding that "the risk that its customers will turn to competitors . . . is substantial and could result in immeasurable harm." 416 F.Supp. at 570.[5] The extent of Micro Switch sales is not a sufficient basis for plaintiff's expectation of widespread customer defection. Micro Switch sales constitutes only one hundred and fifteen thousand dollars of a six million dollar annual operation.

---

2. It appears that in 1977, Micro Switch altered its longstanding policy of terminating distributors only for financial reasons or by mutual agreement and included in its Authorized Policy a thirty day termination clause.

3. Michael Rosen, the vice president and sales manager of Grand Light was less than forceful in his contention that the blanket order business would be curtailed. He stated that "it is conceivable that if you don't have it (Micro Switch), you might not have other business that comes with it." Tr. p. 111–112.

4. In support of this proposition, plaintiff also cited *Semmes Motors Inc. v. Ford Motor Co.*, 429 F.2d 1197 (2d Cir. 1970). However, in *Semmes*, unlike the present case, Ford terminated plaintiff's sole product thereby effectively ending plaintiff's business.

5. In *Interphoto*, the Court also indicated that because the terminated product accounted for forty percent of Interphoto's sales, immediate loss of customers may follow. 295 F.Supp. at 724.

And Grand Light has failed to produce additional convincing evidence for their claim of customer loss. In *Interphoto*, the Court found convincing proof of irreparable injury based in part upon testimony that plaintiff "has already received complaints about the possible absence of Minolta goods from its inventory, accompanied by threats to do business elsewhere." 295 F.Supp. at 723–4. Here, Grand Light's only evidence of customer loss consists of predictions from its own officers. In fact, the vice president of Grand Light stated unequivocally that Oakes Electric Company, another independent electrical distributor, continues to be a premier electrical distributor despite termination by Micro Switch.

■ Grand Light's concern about a reduction in business is unjustified in light of testimony from Grand Light's own witnesses that Micro Switch lines are available from other distributors at a discount price.[6] Moreover, these same witnesses were unable to substantiate their contention that substitutes for the core line produced by other manufacturers do not exist. In sum, plaintiff has not demonstrated that it will be harmed sufficiently by the termination to merit equitable intervention by this Court at this time.

■ Nor has plaintiff met its burden of proving that money damages is an insufficient remedy for the alleged injury. Proof of inadequacy of a legal remedy is a sine qua non of irreparable harm. *American Brands, Inc. v. Playgirl, Inc.*, 498 F.2d 947, 949–50 (2d Cir. 1974); *Triebwasser & Katz, supra* at 1356 (2d Cir. 1977). And in antitrust cases in particular, plaintiffs are given broad latitude in establishing proof of damages at trial. *S.C.M. Corp., supra* at 358. In this case, both the comptroller and vice president of Grand Light testified that computations based upon past blanket orders

would permit calculation of future losses in monetary terms. And should Grand Light choose to obtain Micro Switch lines from other supplies, covering costs would be estimable as well. With respect to the alleged damage to good will, the comptroller testified that it, too, is regularly subject to measurement in dollars and cents.

■ Finally, the fact that the injunctive relief requested here is of a mandatory nature further mitigates against granting plaintiff's motion. In accordance with the law in this Circuit, this Court is reluctant to compel a defendant to perform certain acts unless the factual record clearly shows "extreme or very serious damage." *Clune v. Publishers Assoc. of N.Y.*, 214 F.Supp. 520 (S.D.N.Y. 1962), *aff'd* 314 F.2d 343 (2d Cir. 1963). Plaintiff, as indicated above, has failed to surmount the initial and essential hurdle—proof of irreparable injury—required for issuance of a preliminary injunction. Thus, this Court finds no reason at this time to address the merits of plaintiff's substantive claims. Accordingly, plaintiff's motion for a preliminary injunction is denied.

For the reasons stated above, plaintiff's motion for leave to amend the complaint is granted and its motion for a preliminary injunction is hereby denied.

---

**6.** Plaintiff claims that even if it chooses to obtain Micro Switch from an alternate source it would suffer injury because the technical assistance offered by Micro Switch to its distributors would not be available. However, Grand Light failed to offer any dispositive testimony concerning this claim. Moreover, it is difficult

for this Court to believe that an established electrical distributor, who has been in the business close to fifty years, would be unable to supply this kind of assistance, itself, or find others who could provide it for a given price. Substitute service of this nature certainly would be calculable in money damages.