**GENERAL TEXTILE PRINTING & PROCESSING CORP., Plaintiff,**

v.

**EXPROMTORG INTERNATIONAL CORP., Defendant.**

**No. 94 Civ. 5500 (PKL).**

United States District Court, S.D. New York.

Sept. 7, 1994.

Jed Schlacter, Schlacter & Schlacter, New York City.

Matthew Cocca, Salon, Marrow & Dyckman, New York City.

## MEMORANDUM ORDER

LEISURE, District Judge,

This is an action for breach of contract. Plaintiff General Textile & Processing Corp. ("GTP") is a textile printing and finishing plant. Defendant is a seller of raw, unfinished, textile piece goods. This Court has jurisdiction based on diversity of citizenship. 28 U.S.C. § 1332.

Plaintiff has moved this Court, by way of an order to show cause, for the following relief (1) an order of attachment, pursuant to Fed.R.Civ.P. 64 and Article 62 of the New York Civil Practice Law and Rules ("CPLR"), upon the property of the defendant up to $234,000; and (2) a preliminary injunction, pursuant to Fed.R.Civ.P. 65. In addition, as part of the injunctive relief sought, plaintiff seeks an order from this Court directing defendant to immediately comply with the requirements of the underlying agreement between the parties.

## BACKGROUND

GTP, a textile printing and finishing plant, contracted with defendant to purchase raw unfinished textile piece goods called greige. The general nature of plaintiff's business is to print and finish raw textile greige fabric. Plaintiff then sells the greige fabric to customers, termed textile converters, who in turn resell the fabric to clothing manufactures. Plaintiff uses brokers to assist in their buying and selling of the greige goods.

On or about April 1, 1994, using the services of a broker, GTP agreed to buy 1.4 million yards of cotton greige from Expromtorg. The fabric was to be delivered in three shipments as follows: 300,000 yards in July 1994, 300,000 yards in August 1994, and 200,000 yards each month for the months of September through December 1994. Complaint at ¶ 10. The contract price was $0.55 per yard. *Id.* Since the date of the contract, the market price of the fabric has increased to $.70 per yard. *Id.* at 12. The increase was due in part to an increase in worldwide demand. *Id.* Due to the increased demand and increased price, the parties adjusted the delivery dates of the contract slightly. Since then, defendant has demanded higher prices for its goods, and has failed to deliver the goods as contracted. *Id.* at ¶ 18, 20. To date, plaintiff has had to purchase over 1 million yards of fabric on the open market in order to cover its contracts with its downstream customers. Affidavit of Michael Glick, sworn to on August 4, 1994 ("Glick Aff."), at ¶ 6.

Plaintiff has brought the instant action for breach of contract, anticipatory breach, conversion, fraud and fraudulent inducement,

and seeks specific performance. Plaintiff presently seeks an order of attachment pursuant to Fed.R.Civ.P. 64, and a preliminary injunction pursuant to Fed.R.Civ.P. 65.

### DISCUSSION

## I. PLAINTIFF SEEKS AN ATTACHMENT

Fed.R.Civ.P. 64 provides that all seizure remedies, including orders of attachment, shall be granted pursuant to the law of the state in which the district court sits.[1] In New York State, the issuance of an attachment order is governed by CPLR 6201 and 6212. One of the grounds for an order of attachment is that "[t]he defendant is a nondomiciliary residing without the State, or is a foreign corporation not qualified to do business in the State." CPLR 6201(1). It is uncontested that defendant is a foreign corporation not qualified to do business in New York. *See* Affidavit of Jeffery B. Krongold, sworn to on July 27, 1994 ("Krongold Aff."), at ¶¶ 2–3.

■ Under New York law, to obtain an order of attachment, the movant must show "that there is a cause of action, that it is probable that the plaintiff will succeed on the merits, that one or more grounds for attachment provided in section 6201 exist, and that the amount demanded from the defendants exceeds all counterclaims known to plaintiff." CPLR 6212(a). The burden is on the moving party to establish the grounds for the levy. *Graubard Mollen Dannett & Horowitz v. Kostantinides*, 709 F.Supp. 428, 432 (S.D.N.Y.1989). The issuance of an order of attachment, even if the statutory requirements are met, is in the discretion of the court. *Thornock v. Kinderhill Corp.*, 712 F.Supp. 1123, 1132 (S.D.N.Y.1989); *Merrill Lynch Futures Inc. v. Kelly*, 585 F.Supp 1245, 1259 (S.D.N.Y.1984) ("attachment is a discretionary remedy. It may be denied even when plaintiff otherwise satisfies the statutory requirements").

■ In the instant action, plaintiff appears to have met the requirement of showing a ground for attachment under CPLR 6201(1). The statute allows a plaintiff to secure, for judgment purposes, funds of a defendant who might otherwise dispose of those assets and flee the jurisdiction of the court. *See Landau v. Vallen*, 895 F.2d 888, 891–93 (2d Cir.1990); *ITC Entertainment, Ltd. v. Nelson Film Partners*, 714 F.2d 217, 220 (2d Cir.1983). However, as CPLR 6212(a) makes clear, the court cannot issue an order of attachment solely because the requirements of CPLR 6201 have been met. Attachment is a harsh remedy, and should not be lightly granted by the court. *See, e.g., Thornock*, 712 F.Supp. at 1132; *Merrill Lynch Futures*, 585 F.Supp. at 1259; *Reading & Bates Corp. v. National Iranian Oil Co.*, 478 F.Supp. 724, 726 (S.D.N.Y.1979); *First National Bank of Downsville v. Highland Hardwoods, Inc.*, 98 A.D.2d 924, 926, 471 N.Y.S.2d 360, 362 (3rd Dep't 1983).

■ As the Second Circuit has stated, "although attachment is permitted under CPLR § 6201(1) primarily to afford quasi in rem jurisdiction over a nonresident defendant, the section also serves the independent purpose of providing security for a potential judgment against a nonresident." *Cargill, Inc. v. Sabine Trading & Shipping Co.*, 756 F.2d 224, 227 (2d Cir.1985) (citing McLaughlin, Practice Commentaries, CPLR § 6201(1), at 12 (McKinney 1980); *ITC Entertainment*, 714 F.2d at 220 (2d Cir.1983)). Generally, this Court has held that attachment for security purposes is only appropriate when plaintiff will have difficulty enforcing a judgment and, accordingly, should issue only upon a showing that drastic action is required. *Katz Agency, Inc. v. Evening News Ass'n.*, 514 F.Supp. 423, 429 (S.D.N.Y.1981); *see Reading & Bates Corp.*, 478 F.Supp. at 726–27 (S.D.N.Y.1979) ("When the only purpose for a pre-judgment attachment is security, a different analysis should apply. When jurisdic-

1. Rule 64 states in relevant part:
 At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available

under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought.... The remedies thus available include ... attachment.

tion already exists, attachment should issue only upon a showing that drastic action is required for security purposes."); *accord Philatelic Foundation v. Kaplan,* 1986 WL 5629 * 3–4 (S.D.N.Y.1986).

In the instant action, plaintiff asserts that it is entitled to an order of attachment because all four (4) statutory requirements set forth in § 6201 are present. However, plaintiff's argument falls far short of showing this Court that the drastic remedy of an attachment should be granted. Plaintiff's cause of action is based in breach of contract. The gravamen of plaintiff's complaint is that defendant has begun to sell goods, which were originally contracted to plaintiff, to other buyers at higher prices. Plaintiff contends that presently the market for the fabric at issue is in short supply, and that in order to acquire adequate "cover goods," plaintiff must purchase the fabric at prices which range $.10—$.20 higher than the price contracted with defendant. Thus, plaintiff calculates its potential losses at $221,950. Affidavit of Michael Glick, Sworn to on August 4, 1994, at ¶ 6.

Plaintiff's argument for an attachment is unpersuasive. Presumably defendant is making an extra normal profit from its sales in the tight greige market. If plaintiff is forced to buy the fabric at $.10—$.20 above the contract price, then defendant conceivably is selling the fabric at the same or a similar premium, and these profits would be available to satisfy any potential judgment rendered against defendant. Plaintiff's moving papers and oral argument fail to advance any probative evidentiary facts that defendant has disposed or is about to dispose of any property in order to frustrate a potential judgment, or to flee the jurisdiction of the Court. Moreover, the papers submitted by plaintiff and the arguments presented to this Court fail to show that defendant possesses any intent to defraud. *See Philatelic Foundation,* 1986 WL 5629 * 3–4. ("To determine whether attachment for security purposes is justified, it is necessary to examine subsection (3) of § 6201. Under CPLR § 6201(3), 'it is incumbent upon [plaintiff] to demonstrate that the defendant is acting with intent to defraud' "); *see also Computer Strategies*

*v. Commodore Business Machines,* 105 A.D.2d 167, 172, 483 N.Y.S.2d 716, 721 (2d Dep't 1984) (mere removal or assignment or other disposition of property not grounds for attachment absent an actual showing of fraudulent intent) *reh'g denied,* 110 A.D.2d 743, 488 N.Y.S.2d 616 (2d Dep't 1985).

In short, based on the facts alleged herein, plaintiff has not made a sufficient showing that the drastic remedy of attachment is merited. Accordingly, even assuming the statutory requirements to be met, this Court declines to issue of an order of attachment.

## II. PRELIMINARY INJUNCTION

As the United States Court of Appeals for the Second Circuit ("Second Circuit") has often noted, the grant of a preliminary injunction is an extraordinary and drastic remedy which should not be routinely granted. *See, e.g., Borey v. National Union Fire Ins.,* 934 F.2d 30, 33 (2d Cir.1991); *Medical Soc'y of the State of N.Y. v. Toia,* 560 F.2d 535, 538 (2d Cir.1977). In order to prevail on a motion for a preliminary injunction, the party seeking the injunction must clearly demonstrate: (1) irreparable harm should the relief be denied; and (2) either: (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the moving party's favor. *Sweeney v. Bane,* 996 F.2d 1384, 1388 (2d Cir.1993); *Castrol, Inc. v. Quaker State Corp.,* 977 F.2d 57, 62 (2d Cir.1992); *Resolution Trust Corp. v. Elman,* 949 F.2d 624, 626 (2d Cir.1991); *Coca–Cola Co. v. Tropicana Prods., Inc.,* 690 F.2d 312, 314–15 (2d Cir.1982). As the Second Circuit has also stated, "[i]nequitable conduct alone cannot justify the entry of a preliminary injunction." *Buckingham Corp. v. Karp,* 762 F.2d 257, 262 (2d Cir.1985).

A showing of irreparable harm is usually considered the single most important requirement in determining whether or not to issue a preliminary injunction. *Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 907 (2d Cir.1990); *Computer Assoc. Int'l., Inc. v. Bryan,* 784 F.Supp. 982 (E.D.N.Y. 1992). Thus, in order to demonstrate irreparable injury, a moving party must show that

the injury is irreparable, real and imminent and not merely "remote or speculative." *Id.*

## A. Money Damages Suffice

 "The Second Circuit has consistently stressed that in order to be deemed 'irreparable,' so as to warrant the granting of injunctive relief, the harm alleged by the movant 'must be one requiring a remedy of more than mere monetary damages. A monetary loss will not suffice unless the movant provides evidence of damage that cannot be rectified by financial compensation.'" *Firemens Ins. Co. v. Keating,* 753 F.Supp. 1146, 1150 (S.D.N.Y.1990) (citing *Tucker Anthony v. Schlesinger,* 888 F.2d 969, 975 (2d Cir. 1989)). *See Jackson Dairy, Inc. v. H.P. Hood & Sons,* Inc., 596 F.2d 70, 72 (2d Cir.1979) ("irreparable injury means injury for which a monetary award cannot be adequate compensation"). Further, the Second Circuit has emphasized that the showing of irreparable harm by the moving party must be more than the mere "possibility" of irreparable harm. In order to succeed, the moving party must demonstrate "that it is *likely* to suffer irreparable harm if equitable relief is denied." *JSG Trading Corp. v. Tray-Wrap, Inc.,* 917 F.2d 75, 79 (2d Cir.1990) (emphasis in original). An irreparable injury is one that cannot be redressed through a monetary award. *Id.*

 "While the Court has the discretion to permit injunctive relief for breach of contract, the classic remedy for breach of contract is an action at law for damages. If the injury complained of may be compensated by an award of monetary damages, then an adequate remedy at law exists and no irreparable harm may be found as a matter of law.... Where the damages are clearly difficult to assess and measure, irreparable harm renders a legal remedy inadequate.... However, the mere necessity of making an informed approximation of damages should not preclude the adequacy of a legal remedy." *Rosenfeld v. W.B. Saunders,* 728 F.Supp. 236, 244 (S.D.N.Y.1990) (citations and quotations omitted), *aff'd without op.,* 923 F.2d 845, (2d Cir.1990).

In the instant action, plaintiff has submitted affidavits indicating that it has been able to acquire cover goods, and has suffered monetary damages of over $129,000. Glick Aff. at ¶ 5–6. These alleged damages and other monies lost can be remedied at law. Accordingly, since the damages caused by defendant's alleged breach can be remedied at law, injunctive relief is inappropriate.

## B. Inability to Pay Insufficient

Plaintiff argues that defendant may be insolvent, and thus unable to pay any money judgment. Since the argument plaintiff advances is the possibility that the defendant will be unable to satisfy a money judgment, plaintiff's claim is one premised on money damages. Such damages are not ordinarily sufficient to establish irreparable injury. *See Jackson Dairy,* 596 F.2d at 72.

In only a few instances have courts been willing to issue an injunction based on a defendant's potential inability to satisfy a judgment. In *Productos Carnic, S.A. v. Central American Beef & Seafood Trading Co.,* 621 F.2d 683 (5th Cir.1980), the Fifth Circuit entered an injunction against the disposition of assets pending trial based on a finding that the defendant fraudulently intended to frustrate the enforcement of any judgment. Additionally, in *Phillipp Brothers v. El Salto, S.A.,* 487 F.Supp. 91 (S.D.N.Y.1980), this Court made detailed findings regarding the financial condition of the defendant, its lack of liquid assets and, perhaps most significantly, its location in a foreign country with an unstable government where the collection of a money judgment would be extremely difficult. Under such unique circumstances, the *El Salto* Court considered injunctive relief to be appropriate. *See Philatelic Foundation,* 1986 WL 5629 * 3–4. (finding that where "the claim for injunctive relief is based solely on the not unreasonable speculation that there may be insufficient funds to satisfy an ultimate judgment," the issuance of an injunction is not merited).

In the instant action, plaintiff has failed to convince the Court that defendant's potential inability to pay a money judgment compels the issuance of an injunction. It is significant in this regard that plaintiff contends

that defendant is selling plaintiff's goods above the contract price.

## C. Difficulty of Calculation does not Merit an Injunction

Plaintiff also contends that the actual damages suffered will be difficult to calculate, and thus injunctive relief should be granted. This Court finds plaintiff's argument unpersuasive. The Second Circuit has stated: "In order to recover damages, a claimant must present evidence that provides the finder of fact with a reasonable basis upon which to calculate the amount of damages. He need not prove the amount of loss with mathematical precision." *Sir Speedy, Inc. v. L & P Graphics Inc.*, 957 F.2d 1033, 1038 (2d Cir. 1992).

Furthermore, even if the market for greige goods proves to be in such short supply that plaintiff cannot purchase cover, and thus cannot calculate cover damages, plaintiff may be entitled to lost profits. "Lost profits, though typically 'difficult to prove with exactitude.' may be recovered 'to the extent that the evidence affords a sufficient basis for estimating their amount with reasonable certainty." *Id.* Since plaintiff is a middleman, its lost profits could be calculated as the difference between the contract price, and the downstream market price, less expenses not incurred. *See also Sharma v. Skaarup Ship Management Corp.*, 916 F.2d 820, 825–26 (2d Cir1990). Thus, so long as plaintiff can reasonably calculate the profits that were lost due to defendant's failure to honor the contract, money damages are still an adequate remedy.

## D. Plaintiff's claim of lost Goodwill is Insufficient

Finally, plaintiff alleges that defendant's breach of contract will result in a loss of customer goodwill and, accordingly, injunctive relief is merited. The Court finds, however, that plaintiff's argument based on po-

tential loss of goodwill is not sufficient to merit injunctive relief.[2]

Courts have considered loss of good will as a prerequisite for granting an injunction, but generally only when the loss of good will rises to the level of threatening the business with termination. *See Loveridge v. Pendleton Woolen Mills, Inc.*, 788 F.2d 914, 917 (2d Cir.1986) ("the threatened loss of an ongoing business to a competitor ... strongly suggests irreparable harm"); *Roso-lino Beverage Distributors Inc. v. Coca–Cola Bottling Co.*, 749 F.2d 124, 125 (2d Cir.1984) (the loss of the distributorship, which represented an ongoing business of many years, constitutes irreparable harm); *Semmes Motors, Inc. v. Ford Motor Company*, 429 F.2d 1197, 1205 (2d Cir.1970) (right to continue twenty-year old dealership not measurable in money damages); *Janmort Leasing Inc. v. Econo–Car International, Inc.*, 475 F.Supp. 1282, 1294 (E.D.N.Y.1979) (loss of business not compensable in monetary terms and not reducible to monetary value). This is in comparison to a situation where "customers will begin to 'grumble' and go elsewhere if the [seller] no longer carries a certain product because the manufacturer has terminated the [ ] contract." *Loveridge*, 788 F.2d at 917.

In *Jacobson & Co., Inc. v. Armstrong Cork Co.*, 416 F.Supp. 564, (S.D.N.Y.1976), *aff'd*, 548 F.2d 438 (2d Cir.1977), Judge Weinfeld found that even if the alleged breach would not terminate a business *per se*, where the terminated product for which plaintiff is claiming breach of contract accounts for a large percentage of plaintiff's sales, the Court may find a substantial risk that customers will turn to competitors resulting in immeasurable harm to plaintiff. *Id.* at 569–70 (terminated product accounted for eighty percent of distributor sales). *Accord Travellers Int'l AG v. Trans World Airlines, Inc.*, 684 F.Supp. 1206, 1216 (S.D.N.Y.1988) (the loss of TWA as a customer would irreparably harm plaintiff since TWA constituted 95% of plaintiff's business). *But see Grand Light*

---

**2.** Recently the Second Circuit has stated that "New York law permits recovery for loss of goodwill only if the claimant meets certain stringent requirements of proof." *Toltec Fabrics, Inc. v. August Incorporated*, 29 F.3d 778, 780 (2d Cir.1994) "First, the claimant must show that in fact there was a loss of goodwill.... Second, the claimant must present objective proof of the amount of that loss.... Third, the claimant must show that the loss was caused by the opposing party's breach. *Id.* at 781.

*and Supply Co., Inc. v. Honeywell, Inc.*, 80 F.R.D. 699 (D.Conn.1978) (loss of only $ 115,000 in sales of a six million dollar annual operation not sufficient basis to expect widespread customer defection).

In the instant case, plaintiff has introduced no evidence indicating that defendant's breach will cause it to shut down its business. Nor has plaintiff argued that the percentage of its business generated from its contracts with defendant is of such a magnitude that defendant's action have endangered plaintiff's entire business with potential ruin. Nor has plaintiff shown that any customers have been lost. The present record indicates that plaintiff has been able to acquire cover goods on the open market, and at least to date has presumably been able to meet its customers demands. This case is not analogous to those cited above where a plaintiff faces the potential loss of its entire business because of defendant's breach. Thus, the Court finds that any claim that plaintiff may advance for loss of goodwill is not sufficient for injunctive relief.

Based on the foregoing, this Court concludes that plaintiff has failed to show that it will suffer irreparable harm if injunctive relief is not granted. Therefore, the Court need not address the second prong of the preliminary injunction standard. For the reasons set forth above, plaintiff's motion for a preliminary injunction is hereby denied.

Additionally, this Court having found, based on the present record, that money damages can adequately compensate plaintiff for any damages suffered, this Court denies plaintiff's motion for an order compelling defendant to comply with the terms of the underlying agreement.

### CONCLUSION

For the reasons set forth above plaintiff's motion for an attachment and injunctive relief is hereby denied in its entirety. The parties are hereby ordered to appear before this Court on September 23, 1994, at 10:30 a.m. for a pre-trial conference in Room 312, United States Courthouse, 40 Centre Street, New York, New York.

**SO ORDERED.**